THE BANKERS AND MERCHANTS MUTUAL BENEFIT ASSOCIATION OF THE UNITED STATES V. ANNIE M. STAPP.

No. 6442.

1. **Membership of Mutual Benefit Association—Power of Officers.**—Although the certificate of membership of such association may provide that in the absence of payment of the membership fee it should be of no effect, and also prohibits officers, etc., from deviating from the rules of the association, still when the testimony authorized it it was proper to submit the issue whether the certificate had been issued on credit, and if so it would be valid in absence of payment of membership fee.

2. **Same—Admissions, etc., of Membership.**—Receipt for an installment of annual dues, demand upon party for assessment being only binding or due from members, circulars including the party in list of members, are facts upon which the inference of the fact of membership might be drawn by the jury in opposition to other facts controverting such membership.

3. **Assessments.**—An assessment was payable by a day given in the notice of the assessment. *Held*, that the beneficiary had the right to make the payment within the time designated. In this case the widow made the payment after her husband's death but within the prescribed time. The husband held the benefit certificate.

4. **Fact Case.**—See facts held sufficient to sustain a verdict in suit by widow whose husband held policy in a mutual benefit association.

APPEAL from Grayson. Tried below before Hon. H. O. Head.

A statement is given in the opinion.

*Brown, Gunter & Bliss,* for appellant. —1. The certificate of membership sued upon provides that it shall not become binding until the first payments due thereunder shall have been paid in cash, and the evidence shows that the premium was never paid, for which reason the ap-

pellee had no right to recover.   Brown v. Ins. Co., 59 N. H., 298; Wood
v. Ins. Co., 32 N. Y., 619; Marvin v. Ins. Co., 85 N. Y., 281; Meyers v.
Ins. Co., 27 Pa. St., 268; Bidwell v. Ins. Co., 40 Mo., 42; Bradley v. Ins.
Co., 32 Md., 108; Hoyt v. Ins. Co., 98 Mass., 539; Howell v. Ins. Co., 44
N. Y., 276; Markey v. Ins. Co., 118 Mass., 178; Klein v. Ins. Co., 104 U.
S., 88; Ruse v. Ins. Co., 23 N. Y., 516; Bergson v. Ins. Co., 38 Cal. 541.

2.   By the terms of the certificate of membership no agent of the asso-
ciation had any power to extend credit.   Stapp was an agent of appellant,
and could not waive this condition in his own behalf.   Bank v. Ins. Co.,
62 Texas, 461; Cohen v. Ins. Co., 67 Texas, 325; Ins. Co. v. Le Pert, 52
Texas, 504; Brown v. Ins. Co., 47 Am. Rep., 205; Marvin v. Ins. Co., 85
N. Y., 278; Walsh v. Ins. Co., 73 N. Y., 5; Ins. Co. v. Willets, 24 Mich.,
268; Lucas v. Brooks, 18 Wall., 436.

3.   Appellant sent Stapp the certificate of membership and receipt in
response to a letter from him stating that he had the money with which
to pay his dues.   This was not an extension of credit to him.

4.   Under the laws of California mutual benevolent associations are not
insurance companies within the meaning of the insurance laws of that State.

5.   By the terms of the certificate of membership the failure of Stapp
to pay a mortuary assessment when due caused a forfeiture, and if the cer-
tificate was ever in force it was forfeited by Stapp's failure to pay the as-
sessment of which he was notified.   May on Ins., secs. 355, 357, 354.

6.   The sending of a notice of assessment was no waiver of a previous
forfeiture, because it was specially provided in the notice that it should
not operate as a waiver.   Wood on Ins., p. 834.

*C. N. Buckler*, for appellee. — 1.   The evidence clearly showed that the
certificate was delivered on credit, and the action of the court in giving
and refusing the charges referred to was correct.   Miller v. Ins. Co., 12
Wall., 285; Latoix v. Ins. Co., 27 La. Ann., 113; Wood v. Ins. Co., 32
N. Y., 619; Bocken v. Ins. Co., 35 N. Y., 131; Sheldon v. Ins. Co., 26
N. Y., 460; May on Ins., sec. 360, and cases cited; Wood on Ins., p. 65,
and cases cited; Appleton v. Ins. Co., 59 N. H., 541; Ins. Co. v. Booker,
9 Heisk., 606.

2.   The appellant by delivering the certificate which contained a formal
acknowledgment of the payment of the premium is estopped from averring
or showing nonpayment for the purpose of denying that the contract ever
had any legal existence.   Wood on Ins., 67, 68; May on Ins., sec. 360; Ins.
Co. v. Fernell, 49 Ill., 180; Bash v. Ins. Co., 35 N. J., 429; 5 Benn. Fire
Ins. Cases, 421; Ins. Co. v. Cashaw, 41 Md., 59; Bowman v. Ins. Co., 59
N. Y., 521; Tool Co. v. Ins. Co., 66 N. Y., 613; Hodyson v. Ins. Co., 5
Cranch, 100; Assur. Co. v. Harding, El. B. & E., 183; Anderson v. Thorn-
ton, 8 Exch., 425; Dalzell v. Muir, 1 Camp., 532; Ins. Co. v. Fellows, 1
Disn. (Ohio), 217; Ins. Co. v. Carpenter, 4 Wis., 20; De Ganimede v.

Pigon, 4 Taunt., 246; Phill. on Ins., sec. 514; 20 Barb., 468; 25 Barb., 189; Ins. Co. v. Booker, 9 Heisk., 606; 24 Am. Rep., 344.

3.   The question as to whether the premium was paid or credit therefor given or its prepayment waived is for the jury.   Wood on Ins., 862, and authorities cited.

4.   There was sufficient evidence in the case to warrant the jury in finding that the premium had been paid or "satisfactory arrangements made for its payment."

5.   The appellant after delivering the policy treated the premium as a debt against Stapp.   Wood on Ins., 862.

6.   Upon the question of the power of a mutual insurance association to waive conditions in policy we cite the following authorities:   On page 843, section 550a, May on Insurance says:   "Their certificates of membership often resemble both in form and substance ordinary policies of life insurance, and the courts have with great uniformity treated them as substantially life insurance companies, applying to them and to the virtual relations of the members the rules and principles applicable to the contract of life insurance."   Jones v. Mut. Ben. Assn., 3 S. W. Rep., 447; Tobin v. Mut. Aid Soc., 33 N. W. Rep., 663; Stylow v. Ins. Co., 34 N. W. Rep., 151; Gray v. Ben. Assn., 11 N. E. Rep., 477; Ball v. Aid Assn., 9 Atl. Rep., 103.

STAYTON, CHIEF JUSTICE.—On August 17, 1886, W. S. Stapp died, holding a certificate of membership in appellant corporation, which in terms entitled appellee to $5000 on the death of her husband.   On the death of the husband the company refused to pay, and this action was brought.

The defenses urged were that the deceased had failed to pay the sum of $10 as a fee for membership required to be paid before membership could exist or the certificate be operative, and that he during life had failed to pay a mortuary assessment of $6.65, made on August 2, 1886, of which notice on that day was mailed from the home office in San Francisco, California, to Sherman, Texas, the residence of the deceased.

The certificate of membership bears date March 20, 1886, but it was not delivered until some time after May 23 of same year, when it was sent to deceased, who was agent for the corporation at Sherman, Texas, in pursuance of a letter of that date, which contained the following language: "Why has my policy never been sent me?   'Tis true that I have not been making much money since I have been here, but have always had $10 to pay my dues."

The certificate of membership provides that "This certificate of membership is not binding until the first payments due thereunder shall have been fully received in cash by the association or some agent authorized to receive the same and during the life of said member."

Appellant's general manager wrote to Stapp July 14, 1886, "Again I

call your attention to reporting back business, including your own premium. If you don't want your certificate send it back; it is no earthly good to you without premium paid."

He again wrote on July 20, 1886: "We have forwarded certificates to the amount of $123,000. We have received remittances from you of $171, leaving a balance due us of $75, independent of your own certificate, upon which there is due $10. We have credited up May certificates as paid on our books; amount $136; leaving a balance to credit of June certificates to the amount of $35, which we will credit on return of this report with advices. Please remit the full amount at your earliest convenience, and let us make a new start and keep matters in proper shape in the future."

The last letter written by Manager Allen, dated August 16, 1886, did not arrive until after Stapp's death. Among other things it says: "Then there is your own policy not paid for, issued on the 20th day of March, and you being sick, as your clerk informs us, we could not receive payment for same until you regain your health and be examined, as typhoid fever tends to undermine a person's constitution."

J. B. Thurmond, appellant's secretary during 1886, testified that he never received any money or its equivalent from W. S. Stapp or any other person in payment for the annual dues on the certificate sued on as described in the receipt signed by the witness (being the receipt introduced in evidence by the plaintiff). That the same, if sent, was sent to W. S. Stapp as general agent for collection, the same as though collecting dues from any other person on any other certificate of membership. That Stapp never paid his dues to witness' knowledge, though often requested so to do. That any of the officers, however, had power to receive and receipt for annual dues. That Stapp did remit certain amounts of money from Texas, but as to their application witness could not state. Didn't know whether certificate was sent to Stapp in compliance with his request or not. The correspondence of the association was conducted by witness, general manager, and Badlam, the president."

The annual dues referred to by this witness and others do not relate to the premium or fee for membership, but to an annual payment, in addition to mortuary assessments, of $15, which each member was required to pay on or before March 20 of each year.

The receipt for such dues was offered in evidence by the plaintiff, and was as follows:

"SAN FRANCISCO, March 20, 1886.

"Received $15 for annual fees, according to the terms and conditions of certificate No. 442 on the life of W. S. Stapp, from March 20, 1886, to March 20, 1887.

"To be countersigned by W. S. Stapp.

"J. B. THURMOND, Secretary."

The certificate of membership declares that "in consideration of the representations, agreements, and warranties made in the application for this certificate of membership, and of the payment of the admission fee, and of $15, being the amount of dues for expenses, to be paid on or before the 20th day of March in each year, and every year during the continuance of this certificate, and of all mortuary assessments as per table endorsed hereon, payable at the home office of the association within thirty days from the date of each notice, the Bankers and Merchants Mutual Life Association of the United States does hereby create and constitute William Sheppard Stapp of Los Angeles, county of Los Angeles, State of California, a member of this association, and issue this certificate of membership, subject to the following agreement."

At the date of that certificate Stapp was a resident of Los Angeles.

"R. K. Allen, general manager of appellant during 1886, testified that appellant had never received a cent from Stapp in payment of annual dues on certificate No. 442 sued on; that the certificate was sent to Stapp by mail by witness Thurmond, appellant's secretary, at Stapp's request, he saying he had the money to pay for it, in answer to Stapp's letter dated May 23, 1886; that the secretary was the proper party to receive the dues; that witness knew of no other person connected with appellant who ever received said dues; that President Badlam and witness attended to correspondence of appellant after May 23, 1887; that Stapp, though repeatedly urged, had never written a word with reference to the certificate, not even acknowledging its receipt. The partial list of members printed in our circulars was composed of those who had applied for membership. A man who has not paid his annual dues or premium or has not in some satisfactory manner arranged for their payment is not, under the rules of the association, liable to assessments. The money received by appellant from Stapp was on certificates issued to others, not Stapp. Appellant's business is cash, and no charge for fees was made in Stapp's case. Stapp's name was included among those assessed, but he would not only have had to pay the assessments and back dues but would also have had to undergo another medical examination to entitle him to beneficial membership. The notices of assessments are sent to delinquents in order to give them an opportunity to reinstate themselves."

Badlam, president of appellant, testified that he knew the annual dues were never paid.

The statement of the testimony of the secretary, general manager, and president is taken from brief of counsel for appellant, and although abbreviated is correct.

We understand the witness Allen, however, to say that Stapp never paid any money as premium, annual dues, or on mortuary assessments.

It was agreed that Stapp wrote the letter of date May 23, 1886, and that the letters of July 14 and 20, 1886, were written to him by the gen-

eral manager and deposited in the postoffice at San Francisco for transmission, but there is no evidence whether Stapp received them.

Plaintiff offered in evidence three different printed circulars prepared and circulated by appellant, explaining its system and advertising its business. Those circulars contained a long list, although purporting to be only a partial list, of the members of the association, with statement of amount of insurance held by each. Among these was the name of W. S. Stapp, with statement that he had insurance to amount of $5000, and one in which his name appeared as a member was headed "Reference to some of our most prominent members."

On August 2, 1886, appellant made a mortuary assessment on its members, each amounting to $6.65, and this sum Stapp was requested to pay. The letter which accompanied that notice of assessment was as follows:

"*Dear Sir*—Proof of death of the above named member having been received on July 16, 1886, and found satisfactory, payment of the amount due according to the terms of the certificate has been ordered, and an assessment is now due from you, payable at this office within thirty days from date above (on or before September 2, 1886), according to the terms of your certificate of membership and the by-laws. Please send promptly and avoid forfeiting your membership."

In reference to that assessment Allen wrote to Stapp on July 26, 1886, that on May 28 preceding the association had met with a death loss under certificate No. 339, and that an assessment would be made to pay the same on August 2, payable in thirty days, and giving him in the letter a list of names of certificate holders in Texas agency liable for assessment, and among the names is that of W. S. Stapp. The letter concludes as follows, "they having been insured prior to the death." The letter also informs him that the City Bank of Sherman would attend to collections.

After the death of her husband Mrs. Stapp sent to appellant the amount of the assessment which was payable on or before September 2, but it was returned to her on August 27, 1886, with this statement: "We return same to you as this association has no claim for assessments from your late husband W. S. Stapp, as he forfeited his certificate, not having paid the premium."

This letter abounds in words of sympathy, but insists upon the letter of the contract.

R. K. Allen on August 5, 1886, wrote to W. S. Stapp as follows:

"Wells, Fargo & Co. called and collected $9 from us on account of this agency at Sherman, Texas. You will recollect a remittance of $31, which only ought to have been $22. Please send at once a detailed report of all policies collected by you, with money to balance. We want to get our books and your account in shape and start right. Your account has been a jumbled up mess since the commencement."

The court instructed the jury that appellee was not entitled to recover

if they found from the evidence that the membership fee or premium
was not paid, unless they believed from the evidence that the certificate
of membership was delivered upon a credit—"that is, that said certificate
was so delivered by defendant with the intention that it should take effect
upon delivery, and it would rely upon its right and expectation to collect
such payment after such delivery, then a failure to make said payment
will constitute no defense to this suit, and you will in such case find in
favor of plaintiff as instructed in first paragraph of this charge."

It is urged that the court erred in giving the part of the charge last
referred to, and that it erred in refusing to give the first and second
charges asked by appellant.

The charges refused contained the proposition that in the absence of
actual payment of the premium during the life of the insured the policy
never took effect. It was that if "the certificate of membership was de-
livered to W. S. Stapp upon credit to be paid for in the future, then the
certificate of membership did not become binding upon the defendant,
and you will therefore find for the defendant."

The policy had the usual clause denying to agents the power to make,
alter, or discharge contracts, waive forfeitures, or extend credits.

It is claimed that there was no evidence that justified a submission to
the jury whether a credit was given, and that the verdict is without evi-
dence to support it.

It is further urged that the court erred in refusing to give a charge re-
quested declaring what would constitute a delivery of the certificate with
intent to give credit and make it operative from time of delivery. The
charge last referred to was substantially embraced in the charge of the court,
which it is contended ought not to have been given because there was no
evidence sufficient to raise such an issue of fact. The charge having been
once given, it was not error to refuse to repeat it.

All matters affecting the certificate in question were transacted between
the general manager and secretary of the appellant corporation and the
deceased, and we see no reason to doubt the power of these officers to ex-
tend credit, notwithstanding the terms of the certificate. Wood on Ins.,
pp. 28–35, and citations; Bacon on Ben. Soc., 366–372.

The evidence of the general manager, wherein he states that "a man
who has not paid his annual dues or premium or has not in some satis-
factory manner arranged for their payment is not, under the rules of the
association, liable to assessment," recognizes the fact that payment of pre-
mium in advance was not deemed absolutely essential to the existence of
membership.

The main questions in the case are whether the deceased paid the pre-
mium or was given credit thereon, and it is claimed that there was no
evidence to sustain a finding in favor of appellee on either of these issues.
The certificate bears date March 20, 1886, and it is rendered clear that

it was not delivered until some time after May 23 of that year. If it had been held from the time of its date until the letter of the deceased was written inquiring why it had not been sent because the premium had not been paid, the inference would be very strong that it was not sent until payment was made, notwithstanding the letter of the general manager of date July 14, 1886, which is not shown to have been received by Stapp.

This inference is strengthened by the fact that the secretary, whose business it was to receive moneys, does not state that the premium was not paid, although he testifies fully as to the nonpayment of annual dues.

He also (as does the general manager) fails to produce a copy of the letter accompanying the certificate, and it seems that it never was kept, although it is usual to keep copies of all letters sent.

The facts hereafter to be noticed on the question whether credit was extended have bearing as well on the question of actual payment of the premium.

Was the deceased recognized as a member, subject to the burdens of membership? If so, this must have resulted from the fact that he had paid the premium and all other dues or that credit had been extended to him.

Annual dues amounting to $15 a year, payable on or before March 20 of each year, were required only of members.

From the terms of the certificate of membership we would not understand that the annual dues were to be paid in advance, yet we find in the possession of the deceased a receipt bearing the same date as his certificate of membership, which is at least prima facie evidence that he paid the annual dues for the year ending March 20, 1887.

That it was not countersigned by himself does not deprive it of weight as evidence of the fact that he made that payment, and the defense is not based on his failure in this respect, but on the claim that he failed to pay the premium and an assessment.

This receipt could have been sent to him only as evidence of the fact that he had paid the annual dues named in it, or to be used as evidence of that fact when the payment was actually made.

If for the former purpose, it furnishes the strongest evidence that the deceased was a member, which it is claimed he could not be without actual payment of the premium.

If it was sent for the latter purpose appellant can not well be heard to say that he was not recognized as a member, for if such was not his relation to the association it had no right to demand annual dues of him. In repeated circulars published to the world he was declared to be not only a member, but a prominent member, holding a certificate for $5000. If this was his character it must have been established by the payment of all sums necessary to create it and to keep it in existence until the circulars were published.

On July 26, 1886, the general manager notified the deceased of the death of a member, on account of which it would be necessary on August 2 following to make an assessment on members named, of whom the deceased was stated to be one.    Promptly on the 2d of August that assessment was made on the deceased.    None but members were liable to assessment, and the corporation having full means of knowing who were and who were not members of the association, a jury probably would have great difficulty in coming to the conclusion that the officers of appellant corporation had called upon a person not a member to bear the burdens which membership alone could lawfully impose.

Circumstances sometimes become more potent than direct evidence; and if the jury from the circumstances already referred to concluded that the officers of the corporation were acting with knowledge and in good faith when they called upon the deceased to bear the burdens of membership, this court would not be authorized to set their finding aside.    These demands could not have been made in good faith if deceased was not a member, and he could not be a member without payment of or satisfactory arrangement made for payment of the premium.    No one but the general manager states that the premium was not paid, while it is shown that the president and secretary of the corporation had the right to collect premiums and other dues, and this duty seems to have devolved mainly on the latter.

Neither of the officers last named state that the premium was not paid, although this was one of the vital issues in the case, but do testify that the annual dues were not paid, which was a fact pertinent only on the question whether deceased had been recognized as a member.

Within twelve days of the death of Stapp we see the appellant corporation returning to him, through the express company, a sum nearly equal to the premium which it is claimed had not been paid, and this because of a remittance larger than it ought to have been, while in other cases remittances had been appropriated as the officers of the corporation deemed proper without having received instructions as to the accounts to which credit should be given.

That under such a course of dealing money should have been returned to deceased the jury probably found it difficult to reconcile with the claim that he had neither paid nor made satisfactory arrangements to pay the premium on the certificate; and especially so in view of the fact of the corporation's constant recognition of the fact that he held such membership as justified the imposition of burdens upon him which could not lawfully or in good faith be placed on one not a member.

The evidence tends to show that the accounts between the deceased and the corporation were loosely kept, and the premium may have been paid· and by the latter placed to some other account.    But looking to all the evidence, circumstantial as much of it is, we can not say that there was not evidence requiring the court to submit to the jury whether the premium

had not been paid or arrangement for its future payment satisfactory to the company entered into. Nor are we prepared to hold that there was not evidence sufficient to sustain the verdict, although the direct evidence preponderates in favor of the proposition that the premium was neither paid nor credit therefor given.

It is claimed that the failure to pay the assessment made on August 2, 1886, before the death of the husband of appellee defeats her right to recover, notwithstanding she tendered the sum of the assessment within less than thirty days after the assessment was made and notice thereof mailed. The certificate of membership declares that such assessments shall be "payable at the home office of the association within thirty days from the date of each notice." The by-laws of the company contain substantially the same provision, and provide for the restoration of a member in case assessment be not paid within the time prescribed.

We are of the opinion that the beneficiary in the certificate had the right at any time within thirty days after the date of the notice of assessment to pay it. Any other construction of the language would be unreasonable, contrary to the import of the language used, and in many cases destructive of right when there had been no known omission of duty by the member or beneficiary.

We find no error in the proceedings that led to the judgment, and it will be affirmed.

*Affirmed.*

Delivered June 3, 1890.