**PERRY et al. v. CITIZENS LIFE INS. CO.**

No. 14395.

Court of Civil Appeals of Texas.

June 12, 1942.

744

Napier & Napier, of Wichita Falls, for appellants.

B. D. Sartin, of Wichita Falls, for appellee.

SPEER, Justice.

This suit was instituted by Mandie V. Perry and her husband against Citizens Life Insurance Company, to which we shall refer as Company, to recover upon a policy of insurance on the life of Emma Maggie Hanley, to whom we shall refer as insured.

Plaintiff Mandie V. Perry was the beneficiary named in the policy, which was orig-

inally issued by the Company on the life of insured on August 31, 1937. The policy lapsed for non-payment of premiums on November 1, 1939. On December 27, 1939, application was made by the insured for reinstatement and it is alleged that the application was accepted by the Company and the policy reinstated. All premiums' were thereafter paid until the death of insured, on April 6, 1941.

The Company is a Local Mutual Aid Association, organized under the laws of the State of Texas.

Proof of death was duly made and payment refused by the Company. Denial of liability was based upon alleged false and fraudulent statements contained in the applications for the issuance of the policy and for its reinstatement.

The beneficiary pleaded that the Company had waived the provisions of the two applications and with full knowledge of the true facts had estopped itself to rely upon any false statements as to the physical condition of insured at the times of both applications.

J. S. Blair is president of the Company and was at the times of the issuance of the policy on August 31, 1937, and of its reinstatement on December 27, 1939, and had the power and authority to approve applications and issue policies.

Tried to a jury on special issues, the verdict was, (1) that at the time of reinstatement of the policy, Blair was in possession of facts which were reasonably sufficient to put him on notice of every material fact pertaining to the status of insured; (2) Blair did not know insured was an inmate of the county poor farm at the date of reinstatement; and (3) Blair did not know that insured was in a wheel chair at the county poor farm at the time of reinstatement. The beneficiary (Mandie V. Perry, joined by her husband) moved for judgment on the verdict. The Company filed motion for judgment non obstante veredicto, to disregard the answer to Special Issue No. 1, based upon the contention that there was no testimony to support the finding. Beneficiary's motion was by the court overruled, and that of the Company sustained, and judgment was entered in favor of the Company; hence this appeal by plaintiffs.

The policy appears to be the form approved by the State for companies operating under its authority as was this one. By its terms the application for insurance and the policy constitutes the entire agreement, and that if any false statement is contained in the application, health certificate or application for reinstatement of a lapsed policy, pertaining to present health of the insured, or any other fact that would be material to the risk, or if the insured should not be in good health when the policy is delivered, the policy would be null and void and the liability of the company was limited to the return of the premiums and no more. That no agent had authority to change or modify the obligation of the company from those contained therein.

The sole question involved in this appeal is whether or not the trial court erred in refusing to enter judgment for plaintiffs on the verdict and in sustaining the Company's motion for judgment notwithstanding the verdict.

The evidence shows without dispute that Mrs. Emma Maggie Hanley, the insured, had for many years been a paralytic—her lower extremities were totally paralyzed and she sat in a wheel chair at all times when not in bed. This condition existed at the time her original application for insurance was made, on August 26, 1937, and when the application was made for reinstatement on December 27, 1939. There was no material change in her condition until her death on April 6, 1941, except for an occasional cold and a type of trouble common to many women at her then age of 46. Prior to the date of the first application insured made her home with her sister, the beneficiary in the policy. Insured being perfectly helpless except for the use of her hands, beneficiary could no longer wait upon her, and had her sent to the "county poor farm" of Wichita County, where she could be looked after by nurses and have medical treatment by the County Health Officer, who paid the institution weekly visits. Dr. Lynch, the health officer, described her condition, substantially, as being badly deformed in her back and ribs; her ribs almost touched her pelvic bone, her abdominal cavity was practically closed because of this deformed condition; that her lower extremities were paralyzed; that she was kept in the hospital ward of the institution where attendants were always on duty; that on account of the deformities described, he did not consider her in sound health.

The application for insurance, dated August 26, 1937, was taken by a Mrs. Watkins, a soliciting agent for the Company. It was

upon one of the Company's printed forms, with blanks filled out, and was signed by insured. Just above the printed matter this was written: "Curvature of spine, but good physical condition". It goes on to state that applicant is a normal person, in perfect health and free from any bodily injury or disease; that she neither has nor has had heart disease, kidney disease, tuberculosis, paralysis, nor many other named diseases. This provision is found in the application: "It is hereby agreed that this application shall be a part of the contract if accepted. * * * I also agree that the Citizen's Life Insurance Company shall not be liable until and unless policy is delivered to me while I am alive and in good health, free from any bodily disease * * *."

The policy was issued upon the above application. All premiums were paid until November 1, 1939, when the policy lapsed for non-payment of premiums. The reinstatement application was made on December 27, 1939, in which it is stated that applicant was in good health and free from any bodily disease, and that she had not been attended by any physician since the date of the policy. The application reaffirms the truth of all statements contained in the original application. Upon this application and payment of premium the policy was reinstated.

It may safely be said that practically all of the material statements in the two applications pertaining to good health were untrue and that insured, as well also the beneficiary, knew them to be untrue. It is undisputed that insured was in substantially the same physical condition when the reinstatement was made that she had been in for many years.

The point for determination is, Did J. S. Blair, president and alter ego of the Company, know of the physical condition of insured, or did he have sufficient knowledge of the material facts to put a reasonably prudent person upon notice that such facts existed, and with that knowledge approve the applications and issue the policy?

Mrs. Watkins, who took the original application, testified that insured's sister (the beneficiary in the policy) told her that she would like to have a policy on her sister (the insured) and told Mrs. Watkins of her physical condition; that witness had not seen the proposed applicant but told Mr. Blair what the sister (beneficiary) had said about the condition of applicant. She said she told Mr. Blair that the proposed applicant was an invalid, but that apparently her health was good; she seemed cheerful and in good health. That Mr. Blair said, "Get the application and we will see if it passes the board." She said she went back and got the application, gave it to Mr. Blair and never knew anything more about it. The witness further stated that later when the policy lapsed Mrs. Perry, the beneficiary, called her and asked about getting the policy reinstated; that she mentioned the reinstatement to Mr. Blair and he said if they would pay up the premiums he would let it go on as it was. The witness said that after the death of insured she was in the Company's office to pay her own premium and Mr. Blair asked her some questions about the condition of insured when she took the application and said if he had known insured was in a wheel chair when the application was presented he would not have issued the policy. She said she told him at the time that insured was an invalid.

Relating to the application for reinstatement, J. D. Perry, a plaintiff and husband of the beneficiary, testified that he took the application to the Company's office and told the lady in the office that insured was out at the county farm in a wheel chair but that her health was all right; that Mr. Blair was called in and the statement about insured was repeated, and Mr. Blair said, "Yes, I have talked to Mrs. Watkins about it and that is all right". That Mr. Blair took the premium money for the reinstatement.

Mr. Blair testified, most emphatically, that neither Mrs. Watkins nor J. D. Perry told him anything about any defects in the physical condition of insured and that he had no notice from any source that she was anything other than in good health; that he would not have issued the policy in the first place, nor would he have reinstated it, if he had known any of the material statements in the applications were false.

Upon this very conflicting evidence the jury found, in response to the first Special Issue, as above indicated, against the contention of the Company.

It has many times been held by our courts that an insurer may issue its binding contract of insurance upon the life of a person without making a medical examination of the insured, but may rely upon the truthfulness of the application relating to his health and physical condition. The statements made in the application in these respects are binding on the applicant and if

materially false will vitiate the contract, unless the insurer with knowledge of the falsity of such statements waives them or by its acts estops itself from relying upon them. Hunt. v. W. O. W. Life Ins. Soc., Tex.Civ. App., 153 S.W.2d 857, writ refused, and cases cited.

■ Estoppel is a rule of equity applied by our courts to prevent a person from taking advantage of a condition or situation when with knowledge of the facts he has so conducted himself as to lead the other party to believe he would not do as he did. Applying the jury finding of facts to this case, if the Company, at the time of reinstatement of the policy, was in possession of facts which were reasonably sufficient to put it on notice of every material fact pertaining to the statements made in the application, which, if insisted upon, would have invalidated the transaction from its inception, and with that knowledge, accepted the premiums required for reinstatement, it waived its right of avoidance on that account, and estoppel in law arises which will preclude the insurer from setting up such false statements in avoidance of its policy contract. Terry v. Texas Prudential Ins. Co., Tex.Civ.App., 77 S.W.2d 761, writ dismissed; Baker v. Fort Worth Mutual Benevolent Ass'n, 115 Tex. 300, 280 S.W. 165.

■ The answer of the jury to Special Issue One being upon a disputed question of fact, was binding upon the trial court in this case. There was ample testimony, if believed by the jury, to support its answer. Under the rule announced in the cited cases, the finding of facts by the jury was equivalent to a finding of waiver and estoppel against the Company.

■ One of the grounds for judgment notwithstanding the verdict, as provided by Article 2211, R.C.S., Vernon's Ann.Civ.St. Art. 2211, is when there is no evidence to support a Special Issue finding. The testimony of Mrs. Watkins and J. D. Perry, referred to above, if believed, will support the Special Issue finding. The jury had a right to believe this testimony and disbelieve that of J. S. Blair to the contrary. It matters not whether an appellate court would have believed as did the jury, the finding of facts by the jury, if supported by competent testimony, is binding upon us. Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824.

■ We therefore conclude that the trial court erred in disregarding the Special Issue finding of the jury and in entering judgment for the Company. This necessitates the reversal of the judgment entered by the trial court.

■ This case was tried below since the effective date of our new Rules of Civil Procedure. The judgment was entered in response to a motion non obstante veredicto. In such cases as this Rule 324 provides for a very different procedure from the practice as it existed prior to the effective date of the new rules. Now, if an appellee who has procured a judgment non obstante veredicto does not bring forward points of error against a judgment which could have been rendered against him on the verdict, he takes the risk of having the judgment as entered, disregarding the verdict, reversed and rendered, if the appellate court finds that the judgment non obstante veredicto was erroneously entered. Rule 324 places the additional burden upon the recipient of a judgment notwithstanding the verdict, to raise on appeal all points which would vitiate a judgment based on the verdict. Appellee (the Company) has not presented to us in any form any point or points showing a valid reason why a judgment entered on the verdict could not have been sustained. Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227, 231, writ refused, want of merit. See, also, a discussion by the Supreme Court of the same rule in cases tried prior to September 1, 1941, in McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442, and Le Master v. Fort Worth Transit Co., Tex. Sup., 160 S.W.2d 224. Appellee (Company) does argue in its brief that it had no knowledge of the infirmities of the insured other than as revealed by the applications. This argument is not borne out by the evidence adduced. The testimony of Mrs. Watkins and of J. D. Perry, above referred to, is to the contrary. The jury was the trier of facts. They were judges of the credibility of the witnesses and the weight to be given their testimony.

The policy contract sued on is for the maximum amount of $1,000, with limitations for payment of lesser amount if death of the insured occurred within a year of the date of the policy. It is obvious that under the facts these limitations do not affect the present liability of the company. There is a provision in the policy giving the Company authority to place its risks in classes and that the insured in this case was, by the Company, placed in the "class shown in the policy". It is further provided that loss

shall be paid out of the mortuary fund for that class or group and no other. However, the policy does not show that insured was so classified or placed in any particular group, and effect cannot be given to those provisions under the record before us.

There is a stipulation of facts that insured died on April 6, 1941; that proof of death was seasonably and timely filed with the Company. It appears that payment was refused and liability denied on May 5, 1941. The policy provides that no suit shall be filed for claim before sixty days after due proof of death is filed with the Company. The most liberal view that could be attributed to these provisions is that payment matured and plaintiffs were entitled to sue therefor sixty days after liability was denied; this would be July 5, 1941. There is no testimony of any character before us which reduces the Company's liability under the contract to an amount less than the principal or maximum sum of $1,000.

Under the record before us and as we construe the applicable law, it becomes our duty to reverse the judgment of the trial court and render judgment for plaintiffs against defendant for $1,000, with legal interest thereon since July 5, 1941. It is accordingly so ordered.