MODERN WOODMEN OF AMERICA v. SHATTUCK. (No. 7246.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 10, 1924. On Motion for Rehearing, Feb. 1925.)

1. Insurance ⟸695—Provision in by-laws and certificate respecting notice to local officer of fraternal benefit society held valid.

Provision in by-laws and beneficial certificate of fraternal benefit society that notice to local camp officer shall not be construed as notice to head camp or officer thereof until presented in writing to head clerk of society *held* valid, in view of Rev. St. art. 4847.

2. Insurance ⟸718—Beneficiary and assured are charged with knowledge of by-laws and their legal effect.

By-laws of a fraternal benefit society are binding upon beneficiary as well as assured, both of whom are charged with knowledge thereof and their legal effect.

3. Insurance ⟸728—Assignee of fraternal benefit certificate obtains no greater rights than beneficiary.

Assignee of fraternal benefit certificate obtains no greater rights than beneficiary who assigned the certificate.

4. Insurance ⟸728—Assignee of certificate held charged with knowledge of limitation on local camp clerk's authority to receive notice.

Assignee of fraternal benefit certificate *held* charged with knowledge of limitation of local camp clerk's authority to receive notice to bind society.

5. Insurance ⟸728—Society, paying beneficiary *without knowledge of claim of assignee*, held not liable to latter.

Fraternal benefit society, paying amount of certificate to beneficiary without knowledge of claim asserted by assignee of certificate, *held* not liable to latter, though notice had been given clerk of local camp.

On Motion for Rehearing.

6. Insurance ⟸695—Notice to local clerk of fraternal benefit society of assignment of certificate held not notice to society.

Notice to local clerk of fraternal benefit society of assignment of certificate by beneficiary to another, *held* not notice to society, though subsequently voucher for amount of certificate payable to beneficiary was sent to him by head office of the society to deliver it to payee, the beneficiary named in certificate.

Appeal from Bexar County Court; McCollum Burnett, Judge.

Action by W. D. Shattuck against the Modern Woodmen of America and another. Judgment for plaintiff, and named defendant appeals. Reversed and rendered as to named defendant, otherwise affirmed.

Truman Plantz, of Warsaw, Ill., George H. Davis, of Rock Island, Ill., and Hicks, Hicks, Dickson & Bobbitt and R. D. Wright, all of San Antonio, for appellant.

E. B. Cocke and B. H. Kelly, both of San Antonio, for appellee.

SMITH, J. As a member of the Austin Camp of the Modern Woodmen of America, a fraternal benefit society, R. W. Wright held a benefit certificate in that order for $1,000, payable upon his death to his wife, E. Leo Wright. It appears that at the time of his death, while the certificate was still in force, R. W. Wright was indebted to W. D. Shattuck in the sum of $447. Within less than a month of Wright's death, by some means not disclosed by the record, Shattuck induced Mrs. Wright to execute and deliver to him an assignment of the certificate to Shattuck, combined with a power of attorney to Emmett B. Cocke to collect the insurance from the society and pay Shattuck out of the proceeds. The recited consideration for the assignment was the existence of the husband's obligation to Shattuck and the widow's desire to pay it. On the day following the execution and delivery of the assignment Emmett B. Cocke, nominated therein as Mrs. Wright's attorney in fact, wrote the following letter to "Mr. Carpenter," clerk of the Austin Camp of the society in question:

"Inclosed herewith I am sending you a copy of assignment of interest, power of attorney, and order or authority, for you to deliver to me whatever may be due Mrs. R. W. Wright from an insurance policy, which her late husband R. W. Wright carried in your order. If I understand your rules correctly, you would pay the claim by check payable to Mrs. Wright. That is, I understand, an invariable rule. Our purpose in getting the assignment and power of attorney is that the matter must go through our hands. We, of course, will expect Mrs. Wright to indorse the check, which she now consents to do. We wish to protect our client, Mr. W. D. Shattuck, from a change of mind by Mrs. Wright, which might be brought by the influence of friends. Mrs. Wright, as you will see, has signed the power of attorney, and is willing to pay this claim of Shattuck's; but, if the check were turned over to her directly, she might be prevailed upon by friends to repudiate her agreement, and she might then refuse to pay the claim, in which event we would have no remedy. I am writing to you to find out whether you will protect our rights in this matter; if you will not, I will be forced to take steps to protect my client. I do not wish to work any hardship on Mrs. Wright, but this is a just claim, and she has agreed to pay it; I intend to do everything in my power to see that she does. Mrs. Wright lives at 2203 Trinity St., Austin; it will probably be better for you to confer with her, and then write me. "Please give this matter prompt attention and oblige.

"Yours truly, Emmett B. Cocke."

To this letter Carpenter, the local clerk, made no reply, nor did he forward it to the head office of the society, or otherwise communicate with the society with reference thereto, and the society had no actual notice of Shattuck's claim or assignment. It is presumed that proof of Wright's death was made to the society in due course, for subsequently voucher, payable to Mrs. Wright, the designated beneficiary, for the amount of the certificate, was sent by the head office to the Austin clerk, who delivered it to Mrs. Wright, who collected the amount

through the banks from the head office, and appropriated the proceeds to her own uses.

Subsequently, Shattuck brought this suit against both Mrs. Wright and the fraternal society for the amount of his claim, with interest. Mrs. Wright in due course filed an answer, in which it was alleged, according to appellant's brief:

"Among other things, alleged that the so-called assignment was without consideration, because the obligation owing by her husband to Shattuck was a community debt for which she was not liable, and that this benefit certificate was her property, and consequently her agreement to pay the obligation, for which she was at no time liable, was unsupported by a consideration. She also alleged that the alleged assignment was procured by fraud and undue influence."

Mrs. Wright seems to have lost interest in the matter with the filing of this answer, however, notwithstanding the defensive facts were locked within her breast, for she did not appear at the trial or testify, but left the society to shift for itself in its endeavor to avoid double payment of the certificate, the full amount of which she had collected and pocketed, in the face of her assignment thereof. The society adopted Mrs. Wright's answer, went to trial thereon, and judgment was rendered in favor of Shattuck against it and Mrs. Wright for $653.37. The latter does not complain of this judgment, but the society has brought up this appeal.

It will be seen, then, that the fraternal society paid the full amount of the insurance certificate to the widow of the assured, she being the beneficiary designated in the certificate, and the only question to be determined here is whether or not the society shall now be required to make an additional payment of more than half of the amount of the certificate to Shattuck, a stranger. The relief sought and obtained by Shattuck works an obvious hardship upon the fraternal society and its surviving members and their beneficiaries, and ought not to be sustained unless the right thereto is clearly established.

It is conceded that the society had no notice or knowledge of the assignment to Shattuck, unless the notice given the camp clerk at Austin should be imputed, although not in fact imparted, to the society. Now appellee seeks to invoke the usual rule that notice to an agent is notice to the principal, and contends that Carpenter, the local clerk, was a local agent of the society, within the contemplation of that rule.

[1] But it is expressly provided in the by-laws of the society, and a like provision was indorsed on the beneficial certificate, that no officer of the society (except in cases not applicable here), nor any local camp officer, is authorized to waive any provision of the by-laws of the society which relate to contracts between the society and its members, and "neither shall any knowledge or information obtained by, nor notice to any local camp or officer or member thereof, or by or to any other person, be held or construed to be knowledge of or notice to the head camp, or the officers thereof, until after said information or notice be presented in writing to the head clerk of the society." It has been held in this and other states that such limitation upon the authority of a local officer of a fraternal benefit society, such as this, is valid and effectual, and we so hold in this case. In fact, it is in effect so provided in our statutes. Article 4847, R. S.; Sov. Camp v. Rodriguez (Tex. Civ. App.) 249 S. W. 266.

[2-4] It is, of course, equally well settled that the by-laws of such a society are binding upon the beneficiary as well as the assured, both of whom are charged with knowledge of such by-laws and their legal effect. Of course, too, when Shattuck took the assignment of the certificate, he obtained no greater rights thereunder than his assignor, the beneficiary, had, even if that assignment was effectual for any purpose, which is questioned in view of the alleged nature of the consideration, or absence of consideration, therefor. Shattuck therefore took the certificate charged with knowledge of the limitation upon the camp clerk's authority, and accordingly the notice given by his attorney to the clerk did not reach the society, constructively or otherwise. Moreover, it is obvious that Shattuck, or at least his attorney, had examined and analyzed the provisions of the certificate, prior to the notice to the camp clerk, for in his letter to the latter the attorney undertook to construe some of those provisions.

[5] We perceive no purpose to be served by going further into a discussion of the case. The conclusions we have set down settle the appeal against appellee, for, since the society paid the full amount of the certificate to the beneficiary specifically designated therein, and had no knowledge of the claim thereto now asserted by Shattuck, a stranger, it will not be compelled to pay such claim. To require it to do so would have the effect of destroying a contract expressly authorized by our statutes, and solemnly entered into between the society and its members.

The case appears to have been fully developed below, and the facts are agreed to by the parties. Accordingly, the judgment is reversed, in so far as appellee was allowed to recover against the Modern Woodmen of America, and judgment is here rendered that appellee take nothing by reason of his suit against said society, and that said society recover of appellee all costs incurred by it in this court and the court below; in all other respects the judgment is affirmed.

Affirmed in part, and in part reversed and rendered.

### On Motion for Rehearing.

It is apparent that we failed to make the original opinion clear, or at least counsel for appellee misapprehends the holdings in the opinion. Appellant's motion for rehearing is

based upon the assumption that the reversal rests upon the doctrine of waiver. The case turns upon the question of notice, however, and not of waiver, which is not in the case at all. We simply held that under the conceded facts the society had no actual notice of the alleged assignment of the certificate by Mrs. Wright to Shattuck, and that under a valid stipulation in the certificate the knowledge of the assignment obtained by the clerk of the local camp at Austin could not be imputed to the society; that being ignorant of the assignment to Shattuck the society properly paid over the insurance to Mrs. Wright, the beneficiary named in the certificate. Why should the society divert the proceeds of the insurance from the insured's widow, who was the designated beneficiary, and pay it over to Shattuck, a complete stranger?

[6] Appellee insists that the local clerk was the agent of the society in paying out the insurance money, and that therefore notice to him, an agent to whom the disbursement of the fund had been entrusted, was imputed to the society, as in ordinary cases of principal and agent. But the premise laid down is not the premise made by the record. The clerk of the local camp was not such agent. He did not handle or pay out the money and had no control over its disbursement. The head office of the society, domiciled in a distant state, simply sent to him a voucher for the amount of the certificate, payable to Mrs. Wright, with instructions to deliver it. His authority in the transaction was no more than that of an automaton, to wit, to deliver the voucher to the payee named therein, Mrs. Wright. He did this, and Mrs. Wright forwarded this evidence of the debt through the banks, which collected it and forwarded the proceeds to Mrs. Wright. Even if under the general rules of agency this purely mechanical connection with the transaction served to clothe the clerk of the local camp with the apparent authority appellee attributes to him, the plain provisions of the certificate and of the society's by-laws expressly deprived him of such authority.

But appellee contends most earnestly that this stipulation was intended to govern the members of the society, "and the members only," and were "not intended in the slightest manner to apply to a stranger or person not a member of the society," and that he, a stranger, could not be bound by this stipulation against the local clerk's authority. We think, however, that when he purchased the certificate he necessarily took it with all its expressed limitations, and that the stipulation operated against him just as effectually as it did against his assignor, the beneficiary, into whose shoes he claims to have stepped. The record warrants the conclusion that he or his attorneys had actual knowledge of the provisions of the certificate, but that is neither here nor there, since he will certainly be charged with knowledge of the contents of the very contract he purchased and now seeks to enforce in this suit.

We have made this brief explanation in deference to the earnest appeal of counsel on motion for rehearing, which is overruled.