## BOWERS v. MODERN WOODMEN OF AMERICA.

## No. 7892.

Court of Civil Appeals of Texas. Austin.
Nov. 22, 1933.

Rehearing Denied Dec. 13, 1933.

H. L. Livingston and John O. Harris, both of Coleman, for appellant.

J. B. Dibrell, Jr., of Coleman, for appellee.

McCLENDON, Chief Justice.

Appellant sued appellee for a $500 balance upon a $1,000 mutual-aid benefit certificate, issued by appellee upon the life of appellant's husband. The defenses urged were: (1) That the certificate had been forfeited for nonpayment of assessments, to which pleading the appellant pleaded reinstatement; and (2) a compromise of the liability for $500, to which appellant pleaded want of consideration in that no bona fide controversy as to liability existed.

In answer to special issues, the jury found that deceased was not in good health at the time of his claimed reinstatement; and that no bona fide controversy existed regarding the validity of the certificate.

We have reached the conclusion that the evidence conclusively shows that the certificate was not in force at the time of deceased's death, and that there was no basis in the evidence to support the jury finding of want of bona fide controversy regarding appellee's liability. Each of these conclusions requires affirmance of the trial court's judgment. We will, therefore, limit our discussion to their consideration, pretermitting other questions urged by appellant.

The facts pertinent to this inquiry, stated substantially, follow:

Appellee is a mutual benefit association, authorized to do business in Texas and having its home office in Rock Island, Ill. Deceased became a member of the order in 1907. In 1930 appellee issued the certificate in suit, which was a substitute for the previous certificate. It carried the usual provision making the by-laws of the association a part of the contract of insurance. These by-laws provided for monthly assessments, which had to be paid to the camp clerk not later than the last day of the month for which they were due. The pertinent by-laws were identical in legal effect, and substantially so in their wording, with those in the certificate involved in Sovereign Camp W. O. W. v. Cameron (Tex. Civ. App.) 41 S.W.(2d) 283, in which a writ of error was refused. The provision which controls the instant case reads: "Sec. 64. Reinstatement within Three Months. Any member suspended for the nonpayment of an assessment, fines, or dues, if in sound health, and not engaged in any of the prohibited occupations mentioned in Sec. 16 hereof, may, within three months from the date of suspension, be reinstated by the payment of the current assessment and dues, and all fines, dues, and assessments which would have to be paid to remain in good standing. Whenever assessments or dues are paid by or for suspended member, for the purpose of reinstatement, said member shall, by such payment, be held to warrant that the member is in sound health and not engaged in any prohibited occupation, and to contract that such assessments or dues, when so paid after suspension for nonpayment, shall be received and retained without waiving any of the provisions of this section, until such time as the Head Clerk or the Board of Directors shall have knowledge that the member was not in sound health when attempting to reinstate, or was engaged in a prohibited occupation; provided, however, that the receipt and the retention of such payment in case the suspended member is, not in sound health, or is engaged in any prohibited occupation, shall not reinstate said member, or entitle such member or any beneficiary or beneficiaries, to any rights under any benefit certificate or rider; and, provided further, that such payment made for the purpose of reinstatement, either before or after

death, shall not constitute a waiver of any provision of these by-laws."

Deceased paid all of his assessments up to and including December, 1930. He defaulted in his January, 1931, assessment, but this was paid for him in due time by the camp clerk. No payments, however, were made for February, March, or April, 1931, and deceased became suspended under the by-laws on March 1, 1931; and was so reported by the camp clerk to the association's home office. On May 11, 1931, appellant paid the camp clerk the assessments for February, March, April, and May, 1931; and also the January, 1931, assessment, which latter was in reimbursement of the clerk personally for the payment he had made on deceased's behalf. The camp clerk issued to appellee a receipt for these payments, and reported deceased as reinstated in his May report; which was forwarded to the home office about the middle of June, 1931. In the meantime, on May 28, 1931, deceased died; and proofs of death were forwarded to the home office prior to forwarding the May report. No representation was made by appellant to the camp clerk regarding the condition of deceased's health at the time the delinquent assessments were paid on May 11, 1931, and no inquiry in that regard was made by the camp clerk; and the camp clerk had no knowledge or information regarding the condition of deceased's health at that time. The doctor's certificate contained in the proofs of death showed that the cause of deceased's death was uremic poisoning that had existed for about ten days; and that the remote cause of his death was arteriosclerosis, which had existed for about a year. On June 29, 1931, appellant addressed a letter to the home office in regard to the certificate, the contents of which are not shown by the record. Perrin, general counsel for appellee, replied to this letter, on July 1, 1931, as follows:

"I appreciate very much your letter of June 29th reporting concerning the last illness of your late husband, John W. Bowers. I appreciate the urgency of some action being taken with reference to the claim arising out of your late husband's death. The difficulty with respect to the claim is that Mr. Bowers was apparently not in sound health on May 11th, and, therefore, not eligible to be reinstated as a member. The Medical Proof of Death, which is submitted in connection with the Death Proofs, states that Mr. Bowers had been afflicted with Arterio Sclerosis for a year preceding his death.

"I am desirous, however, of seeing you receive some substantial benefit from your late husband's membership and while I do not feel justified in recommending the allowance of the claim in full, I would be willing to recommend the allowance of the claim in the amount of $500. Such an amount is more than twice the amount paid into the Society by Mr. Bowers during his lifetime and seems to me to be a very liberal adjustment. If this disposition of the matter is agreeable to you, kindly let me know by return mail, so that I may forward you a proper settlement agreement to be signed and returned to me prior to the next meeting of our Board of Directors, which will be held on July 13th."

To this letter appellant replied, on July 7, 1931:

"Will say in reply to your letter of the 1st. Of course I am disappointed that I can't get the full amount of insurance, but this adjustment will be agreeable with me. You may mail the agreement to be signed by me, and please ask the Board of Directors to take action and grant the $500 at their regular meeting of the 13th.

"Thanking you for your consideration and kindness, I am."

In accordance with this correspondence the governing board of appellee allowed the claim upon the certificate for $500, and the compromise was on July 14, 1931, effected by execution of a written agreement by appellant and acceptance by her of a check of appellee for $500, which she promptly cashed. The compromise agreement recites that appellee "is entitled to deny and reject the claim * * * because the said John W. Bowers had been suspended from membership * * * and was not reinstated while in sound health"; and: "Now therefore, in consideration of the premises, and in order to avoid any controversy, litigation or delay, and for the purpose of arriving at an understanding and an agreement concerning the said claim of the said Verna Bowers, and in order to induce said Modern Woodmen of America to make payment thereof as herein provided, I the undersigned, Verna Bowers, do hereby agree that if said Modern Woodmen of America will pay to me the sum of Five Hundred ($500.00) Dollars, I will accept said sum in full settlement, satisfaction and accord of any and all right, title, claim or interest whatsoever, that I might or could have, under and by virtue of said Benefit certificate and I further agree that upon receipt of said sum, said Benefit certificate shall be null and void."

The finding of the jury that deceased was not in good health at the time appellant paid the delinquent assessments on May 11, 1931, is supported by ample, if not conclusive, evidence.

Appellant contends that the acceptance of the delinquent assessments by the camp clerk constituted an unqualified reinstatement of deceased, since no fraud or collusion was alleged or shown in connection with its payment or receipt; the contention being that the case falls within the principle announced in Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101, 103, Bailey v. W. O. W., 116

Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876, and other cases of like tenor, to the effect that where the association "has actual knowledge of the existence of facts which constitute a forfeiture of the certificate or policy, or where it is legally charged with such knowledge, any unequivocal act done after the forfeiture has became absolute which recognizes the continued existence of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof."

In those cases there was no provision attaching a warranty of good health to the payment and acceptance of delinquent assessments. Consequently such acceptance, with knowledge of the delinquency and the consequent suspension and forfeiture, operated, ipso facto, as an unconditional reinstatement, absent fraud or misrepresentation. In this case, while acceptance operated as a reinstatement, it was nevertheless coupled with and subject to the warranty of good health which was written into it by the quoted by-law. Of course, knowledge, actual or constructive, on the part of the association that deceased was not in good health when the payments were made, would operate as a waiver of the warranty. But such case is not presented by the record.

The instant case is also distinguishable in a number of respects from the case of Sovereign Camp, W. O. W., v. Hines (Tex. Civ. App.) 273 S. W. 927, especially in the respect that the by-laws there provided that in order to secure the reinstatement the member must furnish to the camp clerk a written warranty of his then good health. It was there held that the acceptance of the delinquent assessments without demanding such warranty constituted a waiver.

No such provision is contained in the by-laws here. The duties of the camp clerk required him to accept the delinquent assessments at any time during the 90-day period without exacting any express warranty or representation on the part of deceased regarding his health, and the payment itself under the express provisions of the quoted by-law constituted such warranty. The case falls within the holding of the Cameron Case, above; the by-law in which was identical in legal effect, if not in exact wording, with that at bar.

But aside from this holding, the record conclusively shows that there was a bona fide controversy regarding liability which formed the basis of the compromise settlement. The only knowledge which the record shows the officials of appellee had with reference to deceased's condition of health on May 11, 1931, was acquired from the doctor's certificate to the proofs of death, which indicated that deceased was afflicted with arteriosclerosis at that time. The letter of the general counsel was a proffered compromise, the acceptance of which by appellant constituted an offer on her part; which offer was accepted by the governing board of appellee by approval of the claim for $500. The compromise was consummated by execution of the agreement by appellant and payment of the $500 by check as stated. There is no suggestion in the record of any lack of bona fides in regard to this controversy; and consequently it was a complete settlement of the liability, regardless of the actual existence vel non of such liability.

Appellant contends in this connection that since the memorandum of the board's action, noting that the claim was allowed for $500, made no reference to a compromise, that action of the board was an unequivocal admission of liability and waiver of the suspension and consequent forfeiture.

We are unable to concur in this conclusion. The action of the board was nothing more than an acceptance of the offer of compromise growing out of the negotiations between appellant and the association's general counsel. The agreement executed by appellant conclusively shows that the approval of the claim was in no sense an admission of liability, but a mere acceptance of her proposition of compromise.

The trial court's judgment is affirmed.

Affirmed.