MODERN WOODMEN OF AMERICA V. SARAH JANE HARPER.

No. 6517. Decided May 13, 1936.
Rehearing overruled June 17, 1936.
(94 S. W., 2d Series, 156.)

490

Geo. G. Perrin, George H. McDonald and Templeton, Brooks, Napier & Brown, all of San Antonio, for plaintiff in error.

The certificate of benefit sued upon in plaintiff's petition was not in force at the time of the death of Peter H. Harper because of his suspension from membership in defendant society prior to that time for nonpayment of monthly assessments, made requisite to maintain membership, and that the attempted reinstatement was ineffective because of ill health at the time. Wirtz v. Sovereign Camp W. O. W., 114 Texas, 471, 268 S. W., 438; Sovereign Camp W. O. W. v. Cameron, 41 S. W. (2d) 283; Bailey v. Sovereign Camp W. O. W., 116 Texas, 160, 286 S. W., 456.

*A. N. Steinle* and *H. D. Barrow*, both of Jourdanton, for defendant in error.

In reply to plaintiff in error's proposition. Calhoun v. Maccabees, 241 S. W., 101; Equitable Life Assur. Soc. v. Ellis, 105 Texas, 526, 152 S. W., 625; Mexican Union v. DeOrno, 288 S. W., 1111.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

This suit was brought by Sarah Jane Harper to recover against Modern Woodmen of America (a fraternal benefit society incorporated under the laws of Illinois), as the beneficiary under a certificate of benefit issued by it to her deceased husband, Peter H. Harper.

The trial court instructed a verdict for the plaintiff, on which judgment was rendered, and such judgment was affirmed by the Court of Civil Appeals. 57 S. W. (2d) 863.

By "benefit certificate" dated September 17, 1901, the society certified "that Neighbor Peter H. Harper, a member of Davis Camp. No. 7068, of the Modern Woodmen of America, located at Davis, in the County of Tucker and State of West Virginia, is while in good standing entitled to the privileges of this society, and his beneficiary or beneficiaries hereinafter named shall, in case of his death while a beneficial member of this society in good standing, be entitled to participate in the benefit fund of this society to the amount of two thousand dollars." The beneficiary, named, was Sarah Jane Harper, the member's wife.

The society meets its obligations by levying monthly assessments upon all its members, to be paid to the Clerk of the Camp in which membership is held, on or before the last day of each and every calendar month; the by-laws provide that failure to so pay any regular or special assessment or any local Camp dues including per capita tax, shall ipso facto

work a suspension of the member. Suspended members are not entitled to any of the benefits of the society, either fraternal or financial.

When admitted to membership, Harper was engaged in the occupation of stationary fireman; on the advice of physicians he left West Virginia because the climate was too cold and the altitude too high, immigrated to Texas and settled near Jourdanton, Atascosa County, Texas, where he operated a meat market until about 1913; from 1913 until his death at the age of 68 years, 3 months and 8 days, on March 13, 1931, he was engaged in farming. His residence in Texas covered about twenty years before his death. His membership in the Davis Camp, West Virginia, was never changed.

The local camp records show, as certified by the Consul or Adviser and Clerk, the following:—

"Our camp records show that said Neighbor was suspended and reinstated as follows:—(Give each suspension and reinstatement and correct date thereof).

"Suspended, first day of Jan. 1931. Reinstated Feb. 10, 1931."

It thus appears that during the period of nearly thirty years of his membership, the society had regularly accepted and appropriated his assessments and no question raised as to his illness (diabetes), which his widow testified, began in West Virginia and continued until his death, though he was not confined to bed and performed the daily duties of life until shortly before he died.

The record is silent as to the promptitude in making payments on or prior to the last day of the calendar month in which due, until August, 1930, when it appears from a receipt in evidence that on August 21, 1930, there was paid and accepted, the sum of $14.40 covering the assessments for July and August of that year as well as general fund dues to August *30*, 1930.

Again, on September 30, 1930, there was paid and accepted the sum of $7.20 covering the assessment and general fund dues to September *31*, 1930.

■ There appears in evidence no receipt for October and November, 1930, but this is immaterial in view of the Clerk's certificate showing suspension because of nonpayment only of the December assessment before the last day of that calendar month, the case seemingly having been tried on the theory that suspension was solely because of delinquency in the December

and January payments; we must therefore assume that the payments for October and November were satisfactorily met.

There also appears in evidence, a receipt dated February 10, 1931, for payment of the sum of $28.80, covering the assessments for December, 1930, and January, February and March, 1931, and monthly general dues to April 1, 1931.

This sum was so received, accounted for by the camp clerk and the camp records show Harper reinstated as of that date.

The society's by-laws provide for reinstatement of a suspended member, if in sound health, within three months from the date of suspension, upon payment of the current assessment and dues and all fines, dues and assessments which would have to be paid to remain in good standing. It is contended by plaintiff in error, that such payment must be held to warrant that the member is in sound health, and because he was not in sound health on February 10, 1931, he was never legally reinstated and any attempted reinstatement was null and void in view of a provision of the by-laws that assessments paid after suspension for nonpayment shall be received and retained without any waiver until such time as the Head Clerk or the Board of Directors shall have knowledge that the member was not in sound health at the time, and in view of another provision thereof that the retention by the society of any such assessment shall not constitute a waiver, but such assessment shall be returned by the society to the member, if living, and if dead, to the beneficiary or beneficiaries upon their written demand therefor.

It is argued that the society could therefore retain such payments notwithstanding the benefit certificate is not in force, if no such written demand for return be made, but the effect of this, of course, would be a rescission or cancellation of the policy or benefit certificate itself, by the beneficiary.

We think retention of the payment is in certain, if not most, instances, a recognition of the reinstatement for which the payment is made. Bailey v. Sovereign Camp, 116 Texas, 160, 286 S. W., 456, 288 S. W., 115, 47 A. L. R., 876; Calhoun v. The Maccabees, 241 S. W., 101 (Com. App.).

Any action of the proper officers which recognized the continued validity of the benefit certificate after actual or imputed knowledge of a breach of its provisions, amounts to a waiver of the right to forfeit it on account of such breach. Tex. State Mut. Fire Ins. Co. v. Leverette, 289 S. W., 1032, w. e. ref.; Equitable Life Assurance Society v. Ellis, 105 Texas, 526, 147 S. W., 1152, 152 S. W., 625.

Proofs of death were prepared on March 24, 1931, and immediately forwarded to the society. Under date, September 29, 1931, the society's Head Clerk issued a check on the State Bank of Rock Island, Illinois, for $21.60 payable to the order of Sarah J. Harper, which was less than the amount of the assessment payment of February 10, 1931; afterwards under date October 3, 1931, the personal check of the society's local attorneys drawn on the Alamo National Bank of San Antonio, Texas, payable to the order of Mrs. Harper in the sum of $7.20 was issued. These two checks aggregate the amount of said payment of February 10, 1931, and were refused by Mrs. Harper, who had previously, on September 8, 1931, filed this suit.

It will be noted that the offer to return assessment payment covered only that of February 10, 1931.

If the society's contention that there was no waiver at any time, and that under the by-laws, failure to make any payments on or before the last day of any particular calendar month automatically worked suspension of membership, be given full effect, then it would appear that the payment of August 21, 1930, covering the assessments for July and August of that year was ineffective, and the member having been automatically suspended on August 1, 1930, because of non-payment of the July assessment before the last day of that month, remained suspended, and that payment as well as those subsequently made should have been returned or tendered back.

The society is inconsistent in the position now taken that a return tender of only the amount of the last assessment is sufficient, when if it is correct in its claim that the proof of death is sufficient to show that Harper was not in good health on February 10, 1931, it was also sufficient to show that he was not in good health in August, 1930, and he was never in good health after August, 1930, and of course the payments thereafter made accomplished no reinstatement, which if true, made futile the attempt to refund, because the amount of such refund should have included all such assessment payments made by Harper after August 1, 1930.

■ The by-laws provide that no officer of the society nor any local camp or officer or member thereof is authorized or permitted to waive any of the provisions of the by-laws which relate to the contract between the member and the society, neither shall any knowledge or information obtained by nor notice to any local camp or officer or member thereof, or by or to any other person, be held to be knowledge of or notice

to the Head Camp, or the officers thereof, until after said information or notice has been presented in writing to the Head Clerk of the society.

The laws of an association like this may validly provide that no subordinate body or subordinate officers may waive any provisions of its constitution or laws (Modern Woodmen of America v. Shattuck, 266 S. W., 621; Rev. Stat. 1925, Art. 4846), but this does not preclude a waiver by the sovereign body which may be founded upon the principles of waiver or estoppel, by the conduct of officers and agents who are authorized to speak and act upon its behalf. Baker v. Fort Worth Mutual Benefit Ass'n., 115 Texas, at p. 309, 280 S. W., 165; 6 Tex. Jur., 478, Sec. 90.

■ If the essential elements of agency are present, an officer of a local lodge will be held to be the agent of a superior body even though he is the agent of the subordinate body. The Maccabees v. Johnson, 273 S. W., 612; Bailey v. Sovereign Camp, supra, 116 Texas, at p. 172; 6 Tex. Jur., p. 478, Sec. 90; 45 C. J., pp. 127 to 134.

The Supreme Court of Washington in Shultice v. Modern Woodmen of America, 67 Wash., 65, 120 Pac., 531, had before it the very question here involved and resolved it adversely to the society, citing in support of its holding, among others, three Illinois cases, viz:—Foresters v. Schmeitzer, 171 Ill., 325, 49 N. E., 506; Coverdale v. Royal Arcanum, 193 Ill., 91, 61 N. E., 915; and Court of Honor v. Dinger, 221 Ill., 176, 77 N. E. 537.

The Modern Woodmen of America is incorporated under the laws of Illinois and its by-laws provide that payment of death benefits shall only be made to the persons, institutions, companies or bodies permitted by the laws of that state.

And in Indiana (Modern Woodmen of America v. Ball, 77 Ind. App., 388, 131 N. E., 539) discussing this very point, the court held that an officer of a local camp or lodge of a benefit society, charged with the duty of collecting and remitting dues and assessments to the supreme or sovereign organization, is its agent, and his knowledge acquired while performing his duty as such, is the knowledge of his society; a statute (similar to ours) providing that no subordinate body or subordinate officer shall have the power or authority to waive any of the laws and constitution of the society does not contemplate or mean that such knowledge of the subordinate may not be the knowledge of the supreme society.

As recently as Johnson v. Sovereign Camp, W. O. W., 125

Texas, 329, 83 S. W. (2d) 605, a special Supreme Court of Texas, in the case of by-laws similar to those here under discussion, held the supreme lodge bound by acts of the local lodge clerk committed within his authority in collecting dues and assessments from members. So when the payment of August 21, 1930, was reported to the Head Clerk, he had actual notice that it included the assessment for July and of course his acceptance and retention thereof bound the society. Harper having made such payment, out of time, had the right to assume, because it had been done before, that when he made the payment of February 10, 1931, without objection, it was received with the same waiver or estoppel as was that of August 21, 1930.

In a case strikingly similar to this, viz:—Sovereign Camp, W. O. W. v. Hines, 273 S. W., 927, Chief Justice Gallagher, said in affirming judgment for the beneficiary, "defendant could not, with actual knowledge, have speculated upon the outcome of the sickness of the insured, and have accepted him as a reinstated member if he recovered and lived, and have rejected him only in event he died," and again:

"The Sovereign Camp, defendant herein, in the matter of requiring compliance with the provisions of its by-laws on the part of the insured, reinstating him in the order, and reviving his beneficiary certificate, was acting through its local agent, the clerk of its local camp. Such local agent was, in such matters, engaged in the discharge of his principal's business. It is true the principal, under the law of agency, has the right to limit the power and authority of his agent, and parties, dealing with such agent, knowing such limitations, are bound thereby. We may concede that this principle is applicable in the relations between the Sovereign Camp and local camps, or the clerks thereof, in the matter of reinstating members. Nevertheless notice to or knowledge of the local camp, or its officer, received or acquired in the transaction of matters confided thereto by the defendant, is imputed to the defendant. It was bound by such imputed knowledge, notwithstanding it may not have had or did not have actual knowledge of the situation. This rule of law is applied where the agent is the sole representative of the principal in the transaction, as was the clerk of the local camp in this case, even though his action in the premises is improper or in violation of his instructions. Goldstein v. Union Nat. Bank, 109 Texas, 555, 572, 213 S. W. 584; Calhoun v. Maccabees, supra. When the report of the reinstatement of the insured and the remittance covering his arrearages and current dues were received by the Sovereign

Camp, knowledge of the fact that the provisions of its by-laws had not been complied with and that the insured was sick at the time of reinstatement was imputed to it. Notwithstanding such imputed knowledge, it kept the remittance until it was notified of the death of the insured, a space of nearly 2 months from the time of the receipt of the money by the clerk of the local camp, and some 3 weeks after the same was actually received by it at its home office."

■ If the Head Clerk or Board of Directors could for more than twenty years, collect through a local clerk and retain this member's payments without inquiry or further thought or care of him, and successfully claim ignorance of his physical condition, they nevertheless did have actual knowledge soon after the proofs of death were sent in on March 24, 1931. They did not then repudiate the attempted reinstatement by promptly notifying the beneficiary and refunding the assessments the head camp had received, as was made their duty, not only in good conscience but under the provisions of Sec. 64 of its by-laws. On the contrary, so far as the record shows, the Head Clerk and head camp took refuge in silence and retained the funds which it now, but only after suit filed, admits belonged to the widow of its life long member, while denying any obligation to her. Doubtless, if Harper had lived, no forfeiture would have been claimed or sought and the payment of February 10, 1931, would have eased along as did that of August 21, 1930—the only difference being that he died after the February payment and not after the August payment.

We quote from Bailey v. Sovereign Camp., W. O. W., supra:—

"The time has not come in this State when an insurance company, whether fraternal or otherwise, can, with knowledge that a policyholder has forfeited his right of protection, voluntarily accept and retain the premium which the insured has paid, as was done in this instance, without also keeping in full force and effect the liability of said insurance company under said policy. Particularly is this true where the premium is retained with the knowledge of facts constituting a forfeiture and returned only after the death of the insured. One who places his bets after the dice are thrown is sure to win. It is too evident for words that had Bailey lived no forfeiture would have been claimed or sought. But Bailey died, and the premiums were returned. Insurance companies cannot so gamble on the lives of their policyholders. Having accepted

the wager in accepting the premiums, the order was bound by the consequences.

"The law, as we have stated it, is supported by the decisions of this court (see Calhoun v. The Maccabees, supra, and the cases therein cited), and by the Courts of Civil Appeals at San Antonio and at Waco (see The Maccabees v. Johnson, 273 S. W., 612, and Sovereign Camp W. O. W. v. Hines, 273 S. W., 927). We are inclined to follow the law as expressed in those cases."

We again quote from the opinion in that case:—

"This decision is not in conflict with, nor does it seek to overrule the doctrine announced in Sovereign Camp, W. O. W., v. Jackson (Civ. App.), 264 S. W., 289, and other decisions cited in defendant in error's brief, holding that the local clerk has no authority to waive the provisions of the by-laws or conditions of the contract. The rule as laid down in those cases is well established and is sound, growing out of Art. 4846, R. S., 1925, and is firmly entrenched by a long line of decisions. Those are not cases in which the forfeiture had become absolute and the order had thereafter committed any unequivocal act inconsistent with the forfeiture. In those cases a waiver was sought, based upon the act of the local clerk before any forfeiture had occurred, seeking to excuse the insured from the performance of certain provisions of the contract of insurance. In no case was it shown that the order had, after the forfeiture, recognized the continuance of the contract by any act whatsoever."

Neither is this decision in conflict with Praetorians v. Krusz, 58 S. W. (2d) 27, nor with Praetorians v. Strickland, 66 S. W. (2d) 686.

In the Krusz case, the acceptance of the payment was conditional and upon express conditions incorporated in and a part of the receipt. In the Strickland case, no initial or other payment was ever made by the insured, the proof was not sufficient to show "waiver," and the authority of the deliverer of the policy extended merely to the collection of the first or initial payment as a prerequisite to such delivery, of all of which the deceased had notice.

We are cited to Bowers v. Modern Woodmen, 66 S. W. (2d) 422. In that case the society promptly denied liability but offered a sum in compromise of the claim which was accepted and paid. Afterwards, the beneficiary brought suit for recovery of the balance. The court properly gave effect to the compromise.

We agree with the Court of Civil Appeals that under the terms of its by-laws as applied to the facts stated, the society should be held to have waived the provision urged in defense of this suit.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court May 13, 1936.

Rehearing overruled June 17, 1936.