### CALDWELL et al. v. SOVEREIGN CAMP, W. O. W.

#### No. 1799.

Court of Civil Appeals of Texas. Waco.

Dec. 17, 1936.

Rehearing Denied Jan. 14, 1937.

Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellants.

Alvin H. Lane, of Dallas, for appellee.

ALEXANDER, Justice.

This suit was brought by J. F. Caldwell and others against the Sovereign Camp of the Woodmen of the World, a fraternal benefit society, to recover on a life insurance certificate issued on the life of Robert L. Caldwell and payable to the plaintiffs as beneficiaries. The insurance company defended on the ground of a forfeiture for failure to pay monthly dues. A trial before the court, without a jury, resulted in a judgment for the defendant. The plaintiffs appealed.

The facts are practically without dispute. The defendant's constitution contained the following material provisions:

"Sec. 63 (a) * * * every member of this Association shall pay to the Financial Secretary of his Camp one annual assessment in advance each year, or one monthly installment of assessment each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the by-laws of his Camp."

"(b) If he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate. * * *

"Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. * * *

"Sec. 67. Should a person be suspended more than three and less than six months, if in good health, by delivering to the Financial Secretary a certificate of good health signed by himself, in which he shall

warrant that all the statements contained therein are true, and by the payment of all sums which he should have paid had he remained a member, including the current installment of assessment, and upon receipt and acceptance of said health certificate and the money by the Secretary of the Association, and if said person shall remain in good health for thirty days following, he shall again become a member."

The insured became a member of the defendant association in 1898, and had paid all of his dues regularly up to and including the month of April, 1933. The May assessment was not paid when due. However, on the 21st day of July, 1933, the local financial secretary of the association presented to the insured's local bank a receipt for the dues for the month of May, 1933, and said bank, under general authority previously given to it by the insured, paid to said secretary the sum of $2.30, being the amount of the monthly assessment, and said amount was credited to the account of the lodge in said bank. The insured did not at that time pay the monthly assessment for the month of June, nor July. On the 30th of September, 1933, the insured paid to the local financial secretary the sum of $11.50, which was more than sufficient to pay all unpaid assessments up to and including the month of September, and on October 30th the insured paid the monthly assessment of $2.30, and on November 30th he paid a like assessment. Apparently, the payment of $11.50 made on September 30th did not reach the home office of the defendant at Omaha until October 17th. On November 2d the home office addressed a notice to the local financial secretary, advising that it was necessary that the insured furnish a good health certificate as a condition to reinstatement. This communication was received by the local financial secretary about November 8th, and in response thereto the insured immediately delivered to said local financial secretary the certificate as requested, and said secretary mailed the same to the home office, but for some reason it was never received by the association. The insured was in good health at all times from April to November 23, 1933, on which latter date he became ill with pneumonia and died the 1st day of December, 1933. Upon being advised of the insured's death, the association returned to the local financial secretary the proportion of the $11.50 that had been remitted to it and instructed said secretary to return same to appellants. The assessments that were paid m October and November were returned on December 28th, with like instructions, but the amount of the assessment that was paid on July 21st was never returned.

It is appellee's contention that the insured became suspended on June 1st, when the time for paying the May assessment had expired; that the payment of the May assessment, on July 21st, was not sufficient to reinstate the insured, because at that time he did not pay the past-due assessment for June and the current assessment for July; that the payment of $11.50 on September 30th, although sufficient in amount, did not effect a reinstatement, because at that time the insured had been suspended for more than three months and such payment was not accompanied by a certificate of good health; and, although the insured later furnished a certificate of good health, he did not remain in good health for a period of thirty days thereafter, and therefore he was never reinstated and no recovery can be had on the insurance certificate.

This simple statement of the facts of the case makes it readily apparent that the equities are with the insured and that appellee's defense is extremely technical. The insured had been a member of the fraternity for more than thirty-five years and had paid all of his dues up to the time of his death. Although in his last year he faltered temporarily, he soon resumed his payments, discharged his past-due obligations, paid all subsequent assessments as they accrued, and at a time when he was in good health made a good faith effort to comply with the company's requirements for reinstatement, and doubtless died in the belief that he was in good standing in the fraternity to which he had contributed so long. After such long and faithful compliance with the fraternity's demands, his rights and those of his beneficiaries ought not to be lightly disregarded. If such rights are to be denied, it ought to be so only because the plain provisions of the policy and the strict letter of the law required it.

Let us examine the record to see if the insured actually became and remained suspended because of his failure to make prompt payment of the May assessment. It appears without dispute that on July 21st the local financial secretary collected from the insured the amount of the May assessment and this money was

never returned to the insured nor tendered to his beneficiaries. The local financial secretary was the agent of the fraternity to receive payment of assessments. Therefore, payment to him constituted payment to the fraternity. The local secretary knew that the May assessment had not been paid on time and that when said assessment was later paid in full the insured did not then pay the June and July assessments. Notice to or knowledge acquired by the local secretary in the transaction of matters confided to him by the fraternity is imputed to the fraternity. Sovereign Camp, W. O. W., v. Hines (Tex.Civ.App.) 273 S.W. 927, and authorities there cited. Therefore the fraternity is in the position of having knowingly accepted and retained payment of the May assessment in July, after a default had accrued, without, at the same time, requiring payment of the June and July assessments. For what purpose did the fraternity receive and retain the amount of the May assessment if it was not for the purpose of keeping the certificate in force? We must assume an honest purpose on the part of the association, and, if so, why did it receive and retain the man's money if it did not intend to give him insurance in return therefore? He owed the association no other obligation, and we cannot assume an intention on the part of the fraternity to take his money for nothing. Ordinarily, receipt and retention of a past-due premium constitutes a recognition of the reinstatement and continued validity of the insurance for which the payment is made. Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 458, 288 S.W. 115, 47 A. L.R. 876; Calhoun v. The Maccabees (Tex. Com.App.) 241 S.W. 101. In this case the May assessment was paid in July and, although the insured lived until December 1st and the payments made by him subsequent to July were returned after his death, the payment made in July for the May assessment was never returned. As stated by the court in Bailey v. Sovereign Camp, W. O. W. : "The time has not come in this state when an insurance company, whether fraternal or otherwise, can, with knowledge that a policy holder has forfeited his right of protection, voluntarily accept and retain the premium which the insured has paid, as was done in this instance, without also keeping in full force and effect the liability of said insurance company under said policy."

It is true, section 66 (a) of appellee's constitution provided that retention by the association of any installment of assessment paid after a person had become suspended in order to again make him a member should not constitute a waiver of any of the provisions of the constitution, laws, and by-laws, or an estoppel upon the association, but as said by the court in Modern Woodmen of America v. Harper (Tex.Com.App.) 94 S.W.(2d) 156, 157, 159, pars. 4 and 5: "The laws of an association like this may validly provide that no subordinate body or subordinate officer may waive any provision of its constitution or laws (Modern Woodmen of America v. Shattuck (Tex.Civ.App.) 266 S.W. 621; Rev.St.1925, art. 4846), but this does not preclude a waiver by the sovereign body which may be founded upon the principles of waiver or estoppel, by the conduct of officers and agents who are authorized to speak and act upon its behalf. Baker v. Fort Worth Mutual Benev. Ass'n, 115 Tex. 300, at page 309, 280 S.W. 165; 6 Tex. Jur. 478, § 90."

The holdings of the Commission of Appeals in the case of Modern Woodmen of America v. Harper, supra, are so thoroughly in point on all of the questions discussed herein that we do not consider citation of authorities necessary. From what has been said, we think it necessarily results that the insured did not become and remain suspended because of his failure to pay the May assessment within the time provided for in the contract.

If we hold that the insured did not become and remain suspended because of the failure of the insured to make prompt payment of the May assessment and that his default in this respect was waived by the association by the acceptance of the late payment of said installment, then the solution of this case is easy, for in that event the insured could not have been lawfully suspended until July 1st, after the time for paying the June assessment had expired, and it necessarily results that he had not been suspended for more than three months at the time he paid his back dues on September 30th. If he had not been suspended more than three months at that time and was in fact in good health, as the evidence shows he was, then all that was required of him by section 65, in order to be reinstated, was the payment of all back assessments and the assessment for the month in which the payment was made. In

that event no certificate of good health was necessary. The undisputed evidence shows that all back assessments, including the assessment for the current month, were paid on September 30th, and thereafter all subsequent assessments were paid as they matured. Therefore the insured was in good standing at the time of his death, and his beneficiaries are entitled to the benefits of the policy.

The judgment of the trial court is reversed and judgment is here rendered for plaintiffs for the face amount of the certificate, with legal interest, and for the statutory penalty and attorney's fees in the amount stipulated by the parties.