### SOVEREIGN CAMP, W. O. W., v. SUNDAY.

#### No. 10316.

Court of Civil Appeals of Texas. Galveston.

Feb. 11, 1937.

Rehearing Denied March 11, 1937.

Henry, Bickett & Bickett, of San Antonio, for appellant.

John M. Green, of Cuero, and Durell Miller, of Yoakum, for appellee.

CODY, Justice.

This is a suit on a fraternal benefit certificate for $1,000, issued by appellant, a self-governing, nonprofit making, mutual benefit fraternal association, to the insured L. C. Sunday, who died December 26, 1933. Appellee is insured's beneficiary and widow. The case was tried without a jury, and neither findings of fact nor conclusions of law have been filed.

The defense urged by appellant here, as in the trial court, is that at the time of his death Sunday had been suspended and his certificate forfeited by operation of its ipso facto forfeiture provisions. These ipso facto forfeiture provisions are contained in the constitution, laws, and by-laws of appellant association, and incorporated in the certificate by reference. Specifically they are sections 63, 64, 65, 66(a), 66(b), 82 (a, b), and are set out in the opinion of the court in the case of Sovereign Camp, W. O. W., v. Moraida (Tex.Civ.App.) 85 S.W.(2d) 364, now pending in our Supreme Court on writ of error. In substance, they provide that a member must pay a monthly installment assessment on his beneficiary certificate each month, and unless such payment is made before the expiration of the last day of the month for which it is due, the member is ipso facto suspended and his certificate ipso facto forfeited; however, if in good health, a member thus suspended may within three months be reinstated by paying all due and past-due assessments; such reinstatement payment is also a warranty that the suspended member is at the time of making it in good health, and will remain so for thirty days thereafter; and such reinstatement payment shall also evidence such person's agreement that the same shall be received and retained by the association without such receipt and retention constituting a waiver of any of such forfeiture provisions of the association's laws until such time as its secretary shall have received actual, not constructive or imputed, knowledge that the maker of such payment was not in fact in good health when he attempted to reinstate himself and his certificate, and in addition to not constituting a waiver, the receipt and retention of the reinstatement payment shall not work an estoppel. Every officer, employee, or agent of the Sovereign Camp and local camps are expressly incapacitated to waive any condition on which a certificate is issued, or to change, vary, or waive any of the provisions of the constitution or laws, and each local camp is expressly incapacitated from establishing any practice that will have the effect of changing, modifying, or waiving any of the association's laws or requirements. Each certificate is issued only on the condition stated in and subject to the constitution and laws then in force or thereafter enacted, and it is expressly provided that no knowledge or act of any officer or employee of the association shall constitute a waiver of the provisions of its laws or an estoppel against the association.

About two hours before Sunday died on December 26, 1933, his daughter paid to the clerk of the local camp at Yoakum, to which insured belonged, the assessments due for

the current month of December, and overdue for the preceding month of November.

Appellee does not contend deceased was then, and could not contend he for thirty days thereafter remained, in good health. On the contrary, she insists that he had been in bad health, and within the knowledge of the clerk of the local camp, for a long time prior to his death. She further insists that not only was the November assessment overdue when paid, but proved that of the last twenty of Sunday's assessments (not counting the December, 1933, assessment), twelve of them were paid after the date when they fell due, as is shown in the following tabulation:

| Month Installment Due. | When Installment Paid. |
|---|---|
| April, 1932 | April 26, 1932 |
| May, " | May 28, " |
| June, " | June 20, " |
| July, " | July 29, " |
| August, " | Sept. 1, " |
| Sept., " | Oct. 1, " |
| Oct., " | Oct. 31, " |
| Nov. " | Nov. 28, " |
| Dec., " | Dec. 29, " |
| Jan., 1933 | Jan. 30, 1933 |
| Feb., " | March 4, " |
| March, " | April 4, " |
| April, " | May 3, " |
| May, " | June 6, " |
| June, " | Aug. 10, " |
| July, " | Aug. 10, " |
| August, " | Sept. 6, " |
| Sept., " | Oct. 6, " |
| Oct., " | Nov. 2, " |
| Nov., " | Dec. 26, " |

For the convenience of both the deceased insured and the financial secretary of his local camp, all of the above assessments, except the two paid by his daughter on the day he died, were collected at and through the Yoakum National Bank; the secretary would call at the bank either during the month the dues were current or some later date, present a receipt for Sunday to the cashier of the bank and get the money. There is no evidence to show why, except for the month of November, 1933, the secretary did not collect the assessments earlier. During November, 1933, he did not call at the bank for payment of the assessment due that month, but if he had, he would have found insufficient funds there to pay such assessment of $2.49. He did call December 1, and again on December 4, but insured had insufficient money on deposit to pay the November dues. On December 5, Sunday deposited $15 to take care of the November assessment, and sufficient funds remained there until his death to have paid his assessment had the clerk of the Yoakum Camp called for it. As further bearing on the practice of collecting the dues from the members of the Yoakum Camp, it was proved that, a large number paid their monthly assessments at the drug store of Miss Shropshire, and never during the current month but always the financial secretary, hereinafter referred to as clerk, would call there and collect the assessments and leave the receipts, without ever inquiring what assessments, if any, had been paid while current, or during the following month. For instance, the following sums were collected from Miss Shropshire on the dates shown, all collections having been made after the month they were due:

| September | 7, 1932, | $325.12 |
|---|---|---|
| October | 6, " | 311.16 |
| November | 7, " | 299.17 |
| December | 7, " | 281.76 |
| January | 6, 1933, | 281.46 |
| February | 6, " | 282.11 |
| March | 11, " | 268.41 |
| April | 8, " | 257.28 |
| May | 9, " | 255.13 |
| June | 8, " | 273.15 |
| July | 7, " | 250.50 |
| August | 8, " | 244.70 |
| September | 7, " | 259.15 |
| October | 7, " | 264.00 |
| November | 8, " | 282.62 |
| December | 8, " | 286.37 |

There were 130 to 140 resident members of the Yoakum Camp, and for a long time all members had been permitted to pay their monthly assessments at any time before the financial secretary sent off his monthly report, which had to reach Omaha, Neb., by the 15th of the month, and all members were uniformly treated as in good standing who paid before the report was sent in.

Sunday knew that regardless of the state of his account at the bank, the financial secretary did not usually call for his assessment until the following month, and he died believing the deposit made at the bank had protected his November dues. The secretary did not give Sunday notice of the bank's refusal to pay, though it was his practice to call personally, usually the following month after it was due, and collect from those who did not pay at the bank or at Miss Shropshire's drug store.

■ We find no proof that appellant knew, before the trial of this case, of the practice of the local secretary and members of the Yoakum Camp whereby payments due in one month, if made in the succeeding month before the report was sent off, were treated as having been duly made. And by the laws of the association, made under the sanction of article 4846, R.S.1925, appellant cannot have imputed to it the knowledge of its local agent, the financial secretary of the local camp. We are constrained to hold, of the November dues, paid December 26, 1933, that they were paid too late to prevent the ipso facto forfeiture of the policy; unless that forfeiture was waived, or appellant is estopped from claiming a forfeiture, the beneficiary has no right to recover on the certificate. Sovereign Camp, W. O. W., v. Cameron (Tex.Civ.App.) 41 S.W.(2d) 283.

■ The rule governing the waiver by the association of a forfeiture of a certificate is laid down in Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 457, 288 S.W. 115; 47 A.L.R. 876. There Bailey had failed to pay his assessment within the prescribed time, and ipso facto forfeited his insurance. The clerk of the local camp at Fort Worth accepted his overdue assessment and marked him reinstated. Of this action in accepting his overdue assessment, the court argued:

"* * * the defendant order did not have to accept same, and Bailey had no absolute right to make such payment after the expiration of the * * * period without also furnishing a written statement and warranty of good health * * * as provided in * * * said by-laws.

"This brings us to a well-settled rule in the law of insurance, which is as follows: When, under a policy of insurance, a forfeiture has been worked and the insurer has knowledge of the existence of facts which constitute the forfeiture of the certificate or policy, any unequivocal act done after the forfeiture has become absolute, which recognizes the continued existence of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. * * *

"Under the rule announced above, in order to bring about a waiver of the forfeiture, three conditions of facts are necessary: First. The insurer must have knowledge of the facts constituting the forfeiture of the certificate. Second. The forfeiture must be complete and absolute. Third. There must be some unequivocal act on the part of the insurer which recognizes the continuance of the policy, or which is wholly inconsistent with the forfeiture."

■ We agree with appellant that the facts of the present case prevent it being brought within the authority of the Bailey Case. For there, the delinquent member had no absolute right to make payment of a past-due assessment, and the financial secretary of the local camp had the right to refuse to accept such payment. Also at that time the authority of the financial secretary of the local camp had not been so reduced that he was incapacitated by his act as mere secretary to do any act to waive the good health warranty, or by his knowledge to impute knowledge to the Sovereign Camp. Indeed, the difference between the constitution, laws, and by-laws as they existed at the time the Bailey Case was tried, and when the instant case arose, argues most strongly that the changes were made to get around the Bailey Case. We do not mean to say that circumstances might not arise where it might become necessary to hold a financial secretary of a local camp sustained the status to the association of an alter ego; so that, while his knowledge gained as the mere financial secretary could not be imputed to the Sovereign Camp, yet his knowledge gained as the association's alter ego would be binding on it. Circumstances here do not seem to us to have made of the financial secretary of the Yoakum Camp the alter ego of the association in its dealings with Sunday. Supreme Lodge, K. of P., v. Withers, 177 U.S. 260, 20 S.Ct. 611, 44 L.Ed. 762; Modern Woodmen of America v. Harper (Tex.Com.App.) 94 S.W.(2d) 156.

■ If the case of Sovereign Camp, W. O. W., v. Moraida (Tex.Civ.App.) 85 S.W. (2d) 364, laid down the correct rule of law, there could be no doubt but that the acceptance of delinquent dues by a local camp clerk, who then had knowledge of the fact that the insured was not in good health, constituted the making of a new contract between the parties and furnished grounds for a waiver by the association of the forfeiture provision so as to preclude it from asserting the defense of forfeiture, we could affirm the judgment of the trial court under the authority of that case. But our Supreme Court has granted a writ of error therein. The instant case is even stronger than the Moraida Case. The proof here

shows that for twenty months before his death, Sunday was not in good health, yet on twelve different occasions during that time he made payment of his dues after an ipso facto forfeiture had taken place. We concede that the knowledge of the local clerk under the facts of this case, and under the laws of the association, as to these forfeitures, was not imputed to the association. But it is perfectly clear that for all purposes connected with the trial of this cause, appellant's representatives present in court during the trial of this cause in the district court were the alter ego of the association. The association through its representatives at the trial of this case learned the truth about the practice followed by the local clerk at Yoakum, and then, with actual knowledge of the facts about the practice of the local clerk in this case, and of his collection of these past-due assessments when deceased was in bad health, and having this actual knowledge, by then retaining the sums so collected, with the single exception of the payment made on the Sunday account on December 26, 1933, and having failed to tender back to appellee these past-due payments collected from Sunday while in bad health, after having received full knowledge of the facts on the trial, it then and there waived the forfeiture. It could not accept, adopt, and ratify all the acts, practices, and customs that brought into its hands the dues so collected, by retaining them after it had gained full knowledge of the facts whereby Sunday's certificate had been ipso facto forfeited many months before December, 1933, and then single out the assessment received December 26, 1933, to tender back in order to claim the forfeiture, when the other payments made to it under circumstances entitling it to claim a forfeiture were, as stated, retained. We are not prepared to hold that, even had the association, upon gaining this knowledge at the trial, singled out Sunday and returned to him (or his beneficiary) all payments made by him after they had become

delinquent, that by so doing it could put itself in position to claim there was no waiver by it of forfeiture as against him, nor any estoppel. Certainly after the association received full knowledge of all the facts at the trial, it cannot adopt and ratify the acts of the local clerk in collecting from Sunday delinquent payments on twelve other occasions while Sunday was in bad health and retain them, and return the payment made December 26, 1933, and claim a forfeiture because of the last delinquent payment. In choosing to retain the overdue payments on the twelve other occasions, when the same duty rested on it to return them, as to return the payment made December 26, 1933, the association lost the merit it claims for having tendered to appellee the payment of December 26, 1933. As was stated by Judge Ryan, speaking for our Supreme Court in Modern Woodmen of America v. Harper, 94 S.W.(2d) 156, 159:

"It will be noted that the offer to return assessment payment covered only that of February 10, 1931.

"If the society's contention that there was no waiver at any time, and that under the by-laws failure to make any payments on or before the last day of any particular calendar month automatically worked suspension of membership, be given full effect, then it would appear that the payment of August 21, 1930, covering the assessments for July and August of that year, was ineffective, and the member having been automatically suspended on August 1, 1930, because of nonpayment of the July assessment before the last day of that month, remained suspended, and that payment as well as those subsequently made should have been returned or tendered back."

There was ample evidence, as indicated above, to sustain the judgment of the trial court; and finding no merit in appellant's assignments of error, we think the judgment should be affirmed, and it is so ordered.

Affirmed.